22 N.J. Super. 179 (1952)
91 A.2d 638
D. GIORDANO SONS, A PARTNERSHIP CONSISTING OF PETER GIORDANO, GUERINO GIORDANO AND JOHN GIORDANO, PLAINTIFFS,
v.
CHARLES CILIBERTI, BUILDING INSPECTOR OF THE TOWN OF HAMMONTON, AND BOARD OF ADJUSTMENT OF THE TOWN OF HAMMONTON, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 9, 1952.
*180 Mr. Vincent A. DeMarco, attorney for the plaintiffs.
Mr. Samuel Curcio, attorney for the defendants (Mr. Robert N. McAllister, of counsel).
WOODS, J.S.C.
The facts are set forth in the affidavits and statements presented by counsel, as well as the pleadings and exhibits. This action brings up for review the action of the Board of Adjustment of the Town of Hammonton in revoking a permit issued for the erection of a solid wall six feet high to create a solid enclosure of lots 115 to 133, inclusive, of Block 121A, which solid enclosure was to be *181 used for the purposes of storing junk of all types and description under the business commonly known and designated a "junk yard." At the time application for the permit was made, the plaintiffs furnished to the building inspector plot plans drawn to scale by a certified civil engineer of the State of New Jersey who was also the municipal engineer, together with a formal written application for the permit. At the same time, application was made for a certificate of occupancy, and there was paid to the building inspector the fees for both the building permit and the certificate of occupancy.
The local zoning ordinance then in force, adopted on October 22, 1945, placed the lands which are located in the vicinity of Thirteenth Street and Anderson Avenue, in the Town of Hammonton, and are adjacent to and adjoining the Atlantic City Railroad, in the "Industrial District." Section 18 of the zoning ordinance provides:
"(1) Within any Industrial District, no building or premises shall be used for any of the following purposes: * * * junk yard, except within a solid enclosure not less than 6 feet high; * * *."
The surrounding territory is largely used for industrial purposes.
On June 25, 1952 at a meeting of the board of adjustment, the plaintiffs, by their attorney, appeared before the board and
"stated that his client was making an informal application for permission to erect a cyclone fence on the proposed junkyard as a substitute for the solid enclosure required by the zoning ordinance. Mr. DeMarco stated that a permit has been issued which would allow the Giordanos to construct a fence of solid enclosure and he stated further that the Giordanos had all the material on hand to construct such a fence. However, Mr. DeMarco continued, the Giordanos are requesting the granting of permission by the Board to erect a cyclone fence in the place of the solid enclosure because they believe it will be a more suitable fence for the neighborhood. He stated that if the Board feels this type of fence would make a more presentable appearance than a solid fence enclosure, then a formal application for the cyclone fence would be submitted.
*182 Board member M.L. Ruberton questioned whether or not a corrugated fence could be erected. He stated further that he was not in favor of a junkyard being operated in that neighborhood and in view of the power granted the Board under Article 22, paragraph 2, he was willing to take action to overrule the building inspector who had previously granted a building permit for the erection of a fence.
It was moved by Mr. Ruberton, seconded by Mr Miller, that permit No. 2270 issued on June 17, 1952 by the Building Inspector to D. Giordano Sons to erect a solid fence 6' high at 13th and Anderson Ave., in Hammonton, N.J. be and hereby is under the power granted the Board of Adjustment under Section 22, subsection 2, of the zoning ordinance of the Town of Hammonton be and the same is hereby revoked and is of no force and effect." (Excerpt from the minutes of the meeting of the board of adjustment held on June 25, 1952.)
As a result of the adoption of this motion, the board of adjustment instructed the building inspector to send by registered mail a letter to the plaintiffs advising them that the board under the authority vested in it under section 22, subsection (2) of the zoning ordinance, on June 25, 1952 unanimously voted that the permit No. 2270 is "revoked and of no force and effect."
Section 22, subsection (2) of the zoning ordinance reads as follows:
"The Board of Adjustment shall adopt from time to time such rules and regulations as it may deem necessary to interpret and carry into effect the provisions of this Ordinance and shall have the power to review any ruling of the Building Inspector."
The question, therefore, is whether the board of adjustment was invested with the authority to revoke the permit issued by the building inspector, especially since the use was permitted under the zoning ordinance, all prerequisites had been fully met, and no complaints were made or an appeal requested.
It is admitted by the defendants that under the provisions of the zoning ordinance the lots for which the permit is sought are within the Industrial District and that a junk yard may be erected in said district provided the junk yard is surrounded by a solid enclosure not less than six feet *183 high. It is the contention of the defendants, however, that although such a use is permitted, nevertheless, these provisions of the ordinance are not mandatory as against the building inspector and, more particularly, the board of adjustment which under its broad powers has the right to review the action of the building inspector in awarding such a permit, and if, in its opinion such a junk yard should not be erected, then to revoke the issuance of the permit granted by the building inspector.
In the case of Losick v. Binda, 130 A. 537 (E. & A. 1925), the court said:
"The Board of Adjustment, as its title indicates, was created by the act of 1924 solely for that purpose of dealing with properties peculiarly situated, with reference to the zoning requirements, and providing for equitable modifications in zoning regulations, where it is apparent unnecessary hardship would result to an owner if the provisions of the ordinance were literally enforced and not to serve as an appellate body for the purpose of reviewing the legal or equitable character of the inspector's act in allowing or rejecting an application for the building permit." (Italics ours)
See also Lutz v. Kaltenbach, 102 N.J.L. 718, 131 A. 899 (E. & A. 1926) where the court held after quoting Losick v. Binda, supra:
"Boards of adjustment * * * have no authority or jurisdiction to act as an appellate body for the purpose of reviewing the legal or equitable character of the building inspector's act in allowing or rejecting an application for a building permit, nor to pass upon the question as to whether the provisions of the zoning ordinance are in furtherance of the proper exercise of the police power of the municipality."
In the case of Leonard Investment Co. v. Board of Adjustment of City of Trenton, 122 N.J.L. 308, 4 A.2d 768 (Sup. Ct. 1939), the facts are similar to those before us. The court reviewed the action of the Board of Adjustment of the City of Trenton in revoking a permit issued by the building inspector for the erection of a store building in the designated No. 1 Business Zone as defined in the zoning ordinance. Approximately 50 neighboring property owners appealed the action to the board of adjustment, and that *184 body ruled that the zoning ordinance established "minimum requirements adopted for the promotion of the public health, safety, comfort, convenience and general welfare"; and that a duty rested upon it in such a case to "interpret and apply the provisions of the Ordinance so that its general purposes and intent might be realized and substantial justice done, and concluded that the building inspector had erred in issuing the permit in question. The court said, in the opinion by Justice Heher:
"The primary question therefore is whether the board of adjustment was invested with the authority thus exercised."
This is the exact question in the matter before us at this time. Justice Heher continued:
"We are of the view that the action thus taken by the board was coram non judice. The ordinance established the zones * * * Viewing subdivision 19 thereof in relation to the whole it plainly evinces an intention to permit the use of premises in such zones for retail store purposes. The character of the detailed prohibitions is clearly indicative of this design. A retail food market, such as that proposed in the instant case, falls into this category. There is revealed no purpose to make such use of premises in a business zone dependent upon either the size of the establishment, the volume of business, or the number of employees. The residential character of the surrounding territory is beside the point. After all, the lands are in an area zoned for business, with certain definite exceptions not embracive of the use under consideration; and there must be uniformity of application. Arbitrary distinctions are inadmissible. (Italics ours).
Section IX (A-6) which conferred upon the board the power to "vary any requirement" of the ordinance "in harmony with its general purposes and intent, so that substantial justice may be done," does not embrace the broadening of the restrictions laid down in the ordinance.
"It is expressly provided that `this authority shall be exercised solely in instances where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter' of the ordinance, and `in a manner to secure the public health, safety and general welfare.' And the associated specifications of power in this section reveal a design to authorize a variance from the requirements of the ordinance in certain cases, not to vest in the board power to enlarge its inhibitions. (Italics ours) * * *
*185 `And in Losick v. Binda, (102 N.J.L., p. 157), 130 Atl. 537 we further held that boards, such as boards of adjustment, are created for, and have jurisdiction only for the purpose of dealing with properties peculiarly situated with reference to zoning requirements and to provide for equitable modifications where it is apparent unnecessary hardship would result to the owner, if the provisions of the ordinance were literally enforced, as in Allen v. Paterson, 98 N.J.L. 661, 121 Atl. 610, affirmed 99 N.J.L. 532, 124 Atl. 924, and have no authority or jurisdiction to act as an appellate body for the purpose of reviewing the legal or equitable character of the building inspector's act in allowing or rejecting an application for a building permit, nor to pass upon the question as to whether the provisions of the zoning ordinance are in furtherance of the proper exercise of the police power of the municipality.' Lutz v. Kaltenbach, supra.
The resolution of revocation adopted by the Board of Adjustment is therefore vacated."
The authority conferred upon the board of adjustment by section 22 (2), upon which the board relies as the basis for its action in revoking the permit issued by the building inspector, standing alone or read in the light of other subsections of this section and the ordinance as a whole, cannot be interpreted to invest the board of adjustment, on its own motion, with appellate jurisdiction for the purpose of reviewing the legal or equitable character of the building inspector's act in allowing the building permit. In the Hammonton zoning ordinance the lands on which the proposed junk yard is to be established are within an area zoned for industrial purposes, adjoining the right of way of the Atlantic City Railroad, and the ordinance specifically provides that junk yards may be maintained in this area provided they are enclosed with a six-feet high solid fence. This is strengthened by the fact that in section 17 of the ordinance setting up a "Business District," a district which is more restricted than an "Industrial District," junk yards are also permitted within a solid enclosure not less than six feet high. See the case of Dornbusch v. Board of Adjustment of City of Newark, 180 A. 552 (Sup. Ct. 1935), affirmed 117 N.J.L. 424, 189 A. 52 (E. & A. 1936), where the court held that the action of the city board of adjustment in revoking a permit previously issued for an automobile accessory business permitted *186 by the zoning ordinance, was arbitrary and unjustified, especially where the proposed site was in a neighborhood where there were numerous gasoline filling stations.
In our case no protests were made relating to the granting of the permit by the building inspector, and the matter was evidently brought to the board's attention by the plaintiffs' informal application for a variance as to the type of enclosure. There was no notice and no public hearing. As the minutes of the meeting show, one member "stated that he felt it is within their power to revoke the license and since a great injustice to the abutting property owners is being done he favored that action." Another member "stated that he does not feel that this is a place for such a junkyard." The action of the board of adjustment is limited to the powers established by the state statute and they cannot be increased beyond those specifically set forth in R.S. 40:55-39. The board must know where its responsibility begins and where it ends. It cannot broaden the restrictions laid down by the ordinance. It cannot act in an illegal, unreasonable or capricious way. Arbitrary distinctions are inadmissible.
Defendants argue that "at the time of the adoption of the ordinance, R.S. 40:55-36 was in effect, as well as R.S. 40:55-39, passed in the year 1928, c. 274, sec. 9, p. 698," and that agreeable to the statute then in force, the municipal authorities had a right "in appropriate cases and subject to appropriate conditions and safeguards, to make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with the general and specific rules therein contained." This section, to be sure, must be read with R.S. 40:55-39 (L. 1928, c. 274) where there are enumerated certain powers, among which are "Hear appeals from administrative officials," "Hearings involving special exceptions." In the case sub judice there was neither an "appeal" nor "hearing" involving special exceptions. The action here was unjustified. Under section 22, subdivision (2) of the zoning ordinance, the *187 board of adjustment "shall have the power to review any ruling of the Building Inspector." Here there was no review, no reason assigned for action taken except the expressed words of the board members by way of conclusion: "a great injustice to the abutting property owners." This court must be guided not by what the board members feel but by what the statute and ordinance provide. The applicant here has met the standards and the requirements set by the municipal zoning ordinance; the board of adjustment has seen fit to override the inspector's act without going into the merits of the case and under the assumed powers set forth in subdivision (2) of section 22 of said ordinance; that is, arbitrarily to revoke a license under the guise of reviewing a ruling of the building inspector. This action we conclude was unjustified.
The motion for summary judgment in behalf of the plaintiffs is granted and the resolution of revocation adopted by the Board of Adjustment of the Town of Hammonton is therefore vacated and the permit shall be reissued by the Building Inspector of the Town of Hammonton to the plaintiffs.